502 A.2d 1281

COMMONWEALTH of Pennsylvania

v.

**Christopher KAMINSKI, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 5, 1985.

Filed Dec. 13, 1985.

Edward S. Blanarik, Jr., Assistant Public Defender, Ambridge, for appellant.

Sheryl A. Serratta, Assistant District Attorney, Bellefonte, for Com., appellee.

Before SPAETH, President Judge, and MONTEMURO and MONTGOMERY, JJ.

MONTEMURO, Judge:

This is an appeal from a judgment of sentence entered by the Court of Common Pleas of Centre County after a jury trial at which appellant was found guilty of escape. 18 Pa.C.S. § 5121. Following the denial of his post-verdict motions, appellant was sentenced to two and one half to five years imprisonment. This appeal followed.

On April 28, 1983, when the alleged escape occurred, appellant was imprisoned at the State Correctional Institution at Rockview in Centre County. On the same day, a criminal complaint was filed and an arrest warrant was issued. Although a search for appellant commenced the evening of the escape, it proved to be fruitless. It was not until November 20, 1983, that appellant was finally located in Pittsburgh, Pennsylvania, at which time he was arrested on the escape charge.[1] Appellant was detained in Pittsburgh until December 7, 1983, when he was transported to Centre County and was formally arraigned.

This unexplained delay, appellant argues, necessitated his discharge on the escape charge. He now urges

---

1. Although the record is somewhat unclear, appellant apparently was also arrested on other, unrelated charges in addition to escape.

this court to reverse his conviction due to the lower court's failure to grant his motion for discharge.

Pa.R.Crim.P. 123(a) provides that:

> [w]hen a defendant has been arrested in a court case, with a warrant, outside the judicial district where the warrant of arrest was issued, the defendant shall be taken without unnecessary delay to the proper issuing authority in the judicial district of arrest for the purpose of posting bail, as permitted by law.

It is undisputed that appellant was not taken before the proper authority in Pittsburgh "for the purpose of posting bail." Although he is not clear, appellant seems to argue that not only was Pa.R.Crim.P. 123(a) violated, but so too was Pa.R.Crim.P. 123(d),[2] which deals with the procedure to be followed when a defendant fails to post bail. The remedy appellant sought for these violations was a discharge pursuant to Pa.R.Crim.P. 123(g). See N.T. March 8, 1984, at 10.

However, even if these violations occurred, subsection g of Rule 123 does not direct a particular result, but rather leaves to the discretion of the court of the *issuing jurisdiction*[3] the option to either:

(1) discharge the defendant from custody; *or*

(2) release the defendant on bail, conditioned upon the defendant's appearance at the preliminary hearing; and

---

**2.** Pa.R.Crim.P. 123(d) provides:
> When a defendant fails to post bail, the arresting person shall:
> (1) return the defendant to the judicial district where the warrant was issued without unnecessary delay, for preliminary arraignment by the proper issuing authority, or
> (2) lodge the defendant in a suitable place of detention in the judicial district of arrest, and forthwith notify the proper issuing authority in the judicial district where the warrant was issued of the defendant's detention, and the place of such detention. Upon receipt of this notice, the issuing authority shall, without unnecessary delay, cause the defendant to be brought to the judicial district where the warrant was issued for preliminary arraignment by the proper issuing authority.

**3.** Centre County was "the judicial district where the warrant of arrest was issued." Pa.R.Crim.P. 123(g).

(3) forfeit all costs, including mileage and transportation charges, of the arresting and transporting person, in order that such costs and charges shall not be taxed in the case. (Emphasis added).

In the instant case, after appellant was returned to Centre County and arraigned on the escape charge, bail was set at $5,000, although appellant was unable to post it. N.T. March 8, 1984 at 12. Thus, appellant was provided with one of the remedies specified in the subsection of the rule which he argues is applicable in this case. Appellant has presented no argument as to how the Centre County Court, which arraigned him and set bail, abused its discretion by granting him relief pursuant to Pa.R.Crim.P. 123(g)(2) and (3) rather than pursuant to Rule 123(g)(1). Our independent review of the record and of the circumstances of this case fail to unearth any such abuse by the Centre County Court. As such, we find no merit to appellant's Rule 123 claim.

Appellant next argues that the lower court erred by denying his motion to dismiss pursuant to Pa.R.Crim.P. 1100. He argues that because 260 days elapsed between the filing of the complaint on July 28, 1983, and his trial on the escape charge on April 13, 1984, and because the Commonwealth failed to exercise due diligence in bringing him to trial within 180 days, his rights under the Rule were violated. Our review of the record convinces us that due diligence was shown by the Commonwealth, and, as such, the lower court properly excluded the 114 days between the filing of the complaint and appellant's arrest on November 20, 1984. See Pa.R.Crim.P. 1100(d)(1).[4] As such the Com-

4. Although we find ample support in the record for the lower court's decision to deny appellant's motion to dismiss, we are struck by the inherent contradiction between appellant's Pa.R.Crim.P. 1100 argument regarding the Commonwealth's lack of due diligence in finding appellant, and his next assignment of error, which relates to his defense of duress. See discussion, *infra*. That defense *requires*, among other things, that an "escapee *must* return to official detention *as soon as possible* after leaving the prison." *Commonwealth v. Brown*, 314 Pa.Super. 311, 319, 460 A.2d 1155, 1159 (1983) (emphasis added).

monwealth tried appellant within the 180 day requirement of Rule 1100.

While the Commonwealth undisputedly bears the burden of proving by a preponderance of the evidence that due diligence was exercised by the police in their efforts to arrest a defendant, "due diligence," as the term is used in the Rule 1100(d) context, means reasonable efforts are required, not perfect vigilance or exhaustive and constant investigation. *Commonwealth v. Branch*, 337 Pa.Super. 22, 486 A.2d 460 (1984); *Commonwealth v. Laurie*, 334 Pa.Super. 580, 483 A.2d 890 (1984) (cases collected). Our focus on review is to determine whether the police did what they could have done, given the information available to them. *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977); *Commonwealth v. Dorsey*, 294 Pa.Super. 584, 440 A.2d 619 (1982).

In light of these standards, we are convinced due diligence was exercised by the Commonwealth. As stated earlier, a search of the area surrounding the prison compound commenced on the same day that appellant was found missing. That evening, "a regional message was sent" by teletype which listed appellant as an escapee. N.T. April 11, 1984, at 4–5. The next day, April 29, 1983, a helicopter search of the greater State College area ensued after an employee of the prison reported that he thought he had spotted appellant. The state policemen stationed in Centre County contacted their counterparts in Clinton County, Huntingdon County and Pittsburgh after receiving information that appellant might be found in those areas, although all the investigations which followed these communications were unsuccessful. *Id.* at 5–6, 12. Furthermore, another search was undertaken in Centre County between the above-mentioned aerial search and appellant's arrest. *Id.* at 5. We find that this record clearly establishes the Commonwealth's due diligence. *Commonwealth v. Cooper*, 333 Pa.Super. 559, 570 n. 8, 482 A.2d 1014, 1019–20 n. 8 (1984); *Commonwealth v. Dorsey, supra.*

■ Appellant's next contention relates to testimony of defense witness Donald O'Shea. Appellant contends that the court below erred when it limited the scope of Mr. O'Shea's testimony.[5] This claim of error has not been preserved for our review, because not only did defense counsel fail to object to the court's ruling, but apparently was satisfied with the trial court's ruling.[6] The assignment of error is therefore waived. *Commonwealth v. Tallon,* 478 Pa. 468, 478–79, 387 A.2d 77, 83 (1978).

■ Appellant next argues the evidence was insufficient to support the verdict in that the Commonwealth failed to disprove beyond a reasonable doubt the defense of duress.[7] Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, and giving the Commonwealth the benefit of all reasonable inferences from that evidence, we disagree.[8] *Commonwealth v. Brown,* 314 Pa.Super. 311, 460 A.2d 1155 (1983).

5. The trial court's ruling came after the Commonwealth objected to appellant's offer of proof as to Mr. O'Shea.

6. The extent of defense counsel's response to the ruling was as follows:

> THE COURT: All right. I'll let him talk about the white pass status. His observation of the condition of the defendant. He can't testify about whatever these items are taken from the cell, threatening you said or harassment by the guards and so forth. He cannot testify to that.
> Okay. In other words, I'm going to the white pass conversations and whatever you want him to say about knowing him and changes in his contentions I suppose in the last few weeks.
> DEFENSE COUNSEL: Okay.
> THE COURT: That's subject to whatever other objections there may be depending on how the questions are asked.
> DEFENSE COUNSEL: Yes.

N.T. April 13, 1984, at 61.

7. The apparent impetus for appellant's escape was an alleged assault on him by a fellow prisoner which occurred on the same day as the escape. See N.T. April 13, 1984, at 82–86.

8. As duress is an absolute defense to the crime of escape, which relieves the defendant of any criminal liability, the Commonwealth's "burden of disproving the defense of duress beyond a reasonable doubt," *Commonwealth v. Brown,* 314 Pa.Super. 311, 321, 460 A.2d 1155, 1160 (1983), does not arise unless the defendant-escapee has presented evidence which would be admissible to establish the defense of duress. *Cf. Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d

■ For the defense of duress to be successful, four requirements must be met, namely: "the escapee must be confronted with a specific threat of death or serious bodily injury; there must either be no time to complain to authorities, or a history of futile complaints; there must be no evidence of force by the escapee against prison personnel or others in the escape; and the escapee must return to official detention as soon as possible after leaving the prison." *Id.*, 314 Pa.Superior Ct. at 319, 460 A.2d at 1159. These requirements are in the conjunctive; unless all four requirements exist, the defense of duress fails. In other words, if the Commonwealth disproved, beyond a reasonable doubt, one of these prerequisites, such as the specific threat, or the expeditious return to the authorities, the Commonwealth has met its burden. *See Commonwealth v. Brown, supra.*

■ In the instant case, the evidence sufficiently disproves appellant's contention, necessary for the duress defense, that he expeditiously returned to custody.[9] It was undisputed that appellant remained at large for over three and a half months and that he never returned voluntarily to custody but rather was apprehended by the police. In addition, although appellant testified that he attempted to signal his counselor whom he saw driving the day after the escape, he admitted that when he saw the police who were searching for him on that same day, he hid in the laundry room of an apartment building where he had spent the night. N.T. April 13, 1984, at 88–89. His reason for not volunteering himself to the police was that "they would have probably shot me." *Id.* His only justification for not

583 (1982) (evidence admissible to establish defense); see also *Commonwealth v. Brown, supra,* 314 Pa.Super. at 319, 460 A.2d at 1160 (evidence of defense was presented). If proper evidence has not been presented, the defense is not at issue and there is nothing for the Commonwealth to disprove. *Commonwealth v. Stanley, supra; Commonwealth v. Clark,* 287 Pa.Super. 13, 429 A.2d 695 (1981). Of course the Commonwealth always bears the burden of proving the elements of the crime of escape beyond a reasonable doubt.

9. As we can affirm on this basis, we make no comment as to the sufficiency of evidence vis-a-vis the other requirements of the duress defense.

returning to custody after this episode was the vague claim that he was "confused". On the other hand, the Commonwealth established that appellant did not report to any authorities during the entire three and a half month period. Indeed, appellant's own testimony contradicted his claim that he planned to return to custody. Given all the evidence presented, we believe the jury could have properly concluded that duress had not been established and that the Commonwealth disproved beyond reasonable doubt appellant's defense to the crime of escape. *Commonwealth v. Brown, supra*, 314 Pa.Superior Ct. at 319, 460 A.2d at 1159.

■ Alternatively, appellant claims the Commonwealth failed to establish what he calls one of the elements of escape, i.e., that he unlawfully removed himself from official detention. *See* 18 Pa.C.S. § 5121(a) ("A person commits an [escape] if he unlawfully removes himself from official detention . . ."). Appellant stipulated at trial that he was "officially detained" on the day of the escape. N.T. April 13, 1984 at 21–22. Aside from appellant's failure to establish the defense of duress, the Commonwealth did establish that appellant was not given permission to leave and that he was required to return from his work detail by approximately 4:00 p.m. on the day of his escape. *Id.* at 27. It is of course undisputed that he never did return. Clearly, the jury could have concluded that the elements of escape were established beyond a reasonable doubt.

■ Appellant also argues that the verdict was against the weight of the evidence. To the extent that appellant makes an argument in this regard, this contention appears to rest on what may be considered contradictory evidence relating to the lawfulness of his absence from the prison. Any conflict of the testimony goes to the credibility of witnesses which is solely to be resolved by the jury. Essentially, the jury chose, as was its prerogative, to believe the Commonwealth's witnesses. We will therefore not disturb the jury's findings. *Commonwealth v. Brown, supra.*

■ Finally, appellant contends his sentence was manifestly excessive, although he recognizes the sentence which was imposed is within the statutory range. Appellant argues that the court below did not "properly" weigh a list of mitigating factors. Our review of the sentencing hearing and the opinion of the lower court leads us to conclude that the court *did* consider these factors, but felt the seriousness of the offense necessitated the confinement imposed. Considering that the sentence is within the statutory limits, and that the court complied with the requirements of the Sentencing Code,[10] we cannot find a manifest abuse of discretion based upon this record. *Commonwealth v. Brown, supra.* We therefore affirm.

Judgment of sentence affirmed.