J-S30036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VICTOR SALGADO | |
| Appellant | No. 3262 EDA 2014 |

Appeal from the Judgment of Sentence October 9, 2014
in the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0001059-2014

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                   **FILED JULY 14, 2015**

Appellant Victor Salgado appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas following his jury trial conviction for escape.[1]  We affirm.

In early 2014, Appellant was resident at the Lehigh County Community Corrections Center ("CCC"), a county work release facility.  On February 18, 2014, Appellant left the facility at 6:30 a.m. to engage in a job search.  Appellant was scheduled to return to CCC no later than 12:30 p.m. on the afternoon of February 18, 2014.  Appellant did not return or contact the facility to inform authorities of his whereabouts.  On March 3, 2014, the Lehigh County Sheriff's Department received a tip about Appellant's

_____

[1] 18 Pa.C.S. § 5121(a).

whereabouts and, after a brief investigation, located and arrested him without incident.

On October 7, 2014, a jury convicted Appellant of escape. The trial court sentenced him to 15 to 36 months' incarceration. Appellant filed a timely post-trial motion based on the sufficiency and weight of the evidence, which the trial court denied on October 27, 2014. On November 26, 2014, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

A. Whether or not the evidence as presented was sufficient as a matter of law to support the conviction for escape when [Appellant] presented evidence that he acted under duress in escaping from the work release facility as he was threatened with serious bodily injury and the Commonwealth failed to disprove the defense of duress?

B. Was the verdict against the weight of all the evidence in regards to the proof of whether or not [Appellant] acted under duress in committing the escape?

Appellant's Brief, p. 7 (all capitals removed).

Appellant first claims that the Commonwealth adduced insufficient evidence to support his conviction for escape. *See* Appellant's Brief, pp. 11-13. Specifically, Appellant argues that the Commonwealth failed to disprove that he committed the crime of escape under duress. *See id.* This claim lacks merit.

When examining a challenge to the sufficiency of evidence, this Court's standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa.Super.2014).

The Crimes Code defines escape as follows:

**Escape.**--A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

18 Pa.C.S. § 5121(a).

Duress is a defense to criminal culpability. *Commonwealth v. Markman*, 916 A.2d 586, 606 (Pa.2007). The Crimes Code provides:

It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

18 Pa.C.S. § 309(a). To successfully employ the defense of duress, a defendant must establish the following:

> [1] the escapee must be confronted with a specific threat of death or serious bodily injury; [2] there must either be no time to complain to authorities, or a history of futile complaints; [3] there must be no evidence of force by the escapee against prison personnel or others in the escape; [4] and the escapee must return to official detention as soon as possible after leaving the prison.

*Commonwealth v. Kaminski*, 502 A.2d 1281, 1285 (Pa.Super.1985) (internal quotations and citation omitted). "[U]nless all four requirements exist, the defense of duress fails." *Id.* Therefore, "if the Commonwealth disproved, beyond a reasonable doubt, one of these prerequisites, such as the specific threat, or the expeditious return to the authorities, the Commonwealth has met its burden." *Id.* at 1285-86.

The trial court summarized the trial evidence thusly:

> The parties presented the jury with a stipulation (Exhibit C-9) that [A]ppellant was lawfully incarcerated at the CCC on the date of the alleged escape. Timothy Carver, the warden of CCC, testified that [A]ppellant was an inmate at CCC in January and February of 2014. He authenticated Commonwealth Exhibit C-8, [A]ppellant's CCC time card. According to the time card for February 18, 2014, [A]ppellant permissibly left the work release facility at 6:30 a.m. to engage in a job search. According to the warden, [A]ppellant had to return to CCC by no later than 12:30 p.m. that day. However, there was no return time on the time card. Warder Carver confirmed that [A]ppellant failed to return to the facility.
>
> Clifford Knappenberger, the Internal Affairs Director for the Lehigh County Department of Corrections, testified that he was contacted by Warden Carver after [A]ppellant failed to return to CCC. Knappenberger then prepared a criminal complaint and

arrest warrant for [A]ppellant which were signed by District Judge Karen Devine.

The Commonwealth's final witness was Matthew Joseph, a deputy in the Lehigh County Sheriff's Department. Deputy Joseph testified that he received the arrest warrant for [A]ppellant. On March 3, 2014, Deputy Joseph received a tip from a Lehigh County Jail official that [A]ppellant was at a blood clinic in Allentown. Deputy Joseph went to the clinic and took with him a photograph of the [A]ppellant. Appellant was not at the blood clinic. The deputy then began to search the area around the clinic and located [A]ppellant in the 1300 block of Wayne Street. Deputy Joseph approached [A]ppellant and asked for identification. Appellant gave it and was cooperative. He was taken into custody without incident.

Appellant took the stand in his own defense at trial. He did not contest that he consciously failed to return to CCC. However, he claimed that other inmates at the CCC were threatening violence against him so he left the facility to ensure his safety.

Appellant explained he was an inmate at the main Lehigh County Jail prior to being placed in CCC. He claimed that he was assaulted by several inmates at the jail on January 9, 2014. He explained that he wrote to jail staff and expressed a desire to file a private criminal complaint against his attackers. On January 16, 2014, Director Knappenberger responded to [A]ppellant's inquiry and provided him with the forms and directions needed to file a private criminal complaint. Appellant admitted that he never filed the complaint because he did not know the names of his attackers.

Appellant testified that he was transferred to CCC on January 28, 2014. Appellant stated that, on February 11, 2014, he was confronted by a group of inmates at CCC. Two in the group had box cutters. Some in the group told [A]ppellant to leave CCC or he would be attacked. Immediately after the confrontation, [A]ppellant filled out an unsigned request form about the threat and placed it under the door of his case manager. He also got a copy of the form to Sergeant Douglas Moyer of CCC. Appellant did not reveal to his case manager or Sergeant Moyer that he filled out the information on the form. The next day, according to Appellant, he saw Sergeant Moyer searching the lockers of the inmates who had confronted him.

- 5 -

Appellant approached Moyer and told him to search inside a jacket in one of the lockers. Sergeant Moyer did so and he found box cutters there.

Appellant testified that, on February 18, 2014, he was scheduled to leave CCC for a job search. At 4:45 a.m. prior to his leaving CCC, [A]ppellant said he was confronted by two CCC inmates in a bathroom. The inmates told [A]ppellant that they knew that he was the person who had complained to CCC staff about the box cutters. According to [A]ppellant, they told him to leave the CCC or he would be attacked. Appellant left CCC as scheduled without complaining to staff about the altercation. Appellant told the jury that he went to his sister's residence and decided not to return to CCC because he feared that his life was in danger.

Trial Court Pa.R.A.P. 1925(a) Opinion ("1925(a) Opinion)", filed January 22, 2015, pp. 3-5.

Appellant's own testimony established that there was no evidence of "a history of futile attempts" to complain to authorities. To the contrary, CCC staff took steps to ensure Appellant's safety following his February 11, 2014 complaint. Further, Appellant's testimony established that he did not expeditiously return to the authorities once safe from the immediate harm he alleged caused him to flee CCC. He did not need to return to CCC, he simply needed to timely surrender to law enforcement officials somewhere. He did not and testified he did not intend to do so.

Because Appellant's own testimony defeated multiple duress prerequisites, the Commonwealth met its burden of disproving the defense of duress. **See Kaminski**, **supra**. Accordingly, Appellant's sufficiency of the evidence claim fails.

Appellant next claims that the verdict was against the weight of the evidence. **See** Appellant's Brief, p. 13-14. Appellant bases this claim on his conviction that his own testimony was "clear and wholly believable." **See id.** at 14. He is again incorrect.

The denial of a new trial based on a lower court's determination that the verdict was not against the weight of the evidence is one of the least assailable reasons for granting or denying a new trial. **See Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa.2013). This Court reviews weight of the evidence claims pursuant to the following standard:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

**Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa.2000) (internal citations, quotations, and footnote omitted).

Stated differently, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict is so contrary to

the evidence as to shock one's sense of justice,[2] "such that right must be given another opportunity to prevail." ***Commonwealth v. Goodwine***, 692 A.2d 233, 236 (Pa.Super.1997). Moreover, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. ***Widmer***, 744 A.2d at 753. When reviewing the trial court's determination, this Court gives the gravest deference to the findings of the court below. We review the court's actions for an abuse of discretion. ***Id.***

Simply stated, the jury's verdict in this matter illustrates that the jury found the testimony of the Commonwealth's witnesses credible, and Appellant's testimony incredible. The Commonwealth, as discussed ***supra***, proved every element of the crime of escape and disproved the defense of duress. The trial court agreed with the jury's assessment in denying Appellant's post-sentence motion for a new trial based on the weight of the

_____

[2] This Court has explained the notion of "shocking to one's sense of justice" as follows:

> When the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa.Super.2004) (internal citations and quotations omitted).

evidence. As the trial court noted, "nothing about the jury's verdict [] could shock a reasonable person's sense of justice." **See** 1925(a) Opinion, p. 8. Thus, Appellant's weight of the evidence claim warrants no relief.

For the preceding reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2015